IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MARLEAN A. AMES,** : | |
| : | Case No. 2:20-cv-05935 |
| **Plaintiff,** : | |
| : | CHIEF JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Deavers |
| **STATE OF OHIO DEPARTMENT** : | |
| **OF YOUTH SERVICES,** : | |
| : | |
| : | |
| **Defendant.** : | |

**OPINION & ORDER**

This matter comes before the Court on Defendant's Motion for Judgment on the Pleadings. (ECF No. 31).  For the following reasons, this Court **GRANTS** Defendant's Motion for Judgment on the Pleadings.  (*Id.*).

**I. BACKGROUND**

**A. Facts**

This case arises from the alleged discrimination experienced by Marlean Ames in her employment.  (ECF No. 28).  Plaintiff alleges that such discrimination took place on the basis of her gender, sexual preference, and age.  (*Id.* at 1).  Ames is a female who identifies as heterosexual and is over forty years old.  (*Id.* at 2).  Ames has worked for the State of Ohio's Department of Youth Services ("DYS") since 2004.  (*Id.*).  DYS is a state agency that oversees the rehabilitation and confinement of juveniles in Ohio.  (*Id.*).  DYS hired Ames initially as an Executive Secretary within the Parole Division.  (*Id.*).  After starting her tenure with DYS in Akron, Ames soon transferred to the Indian River Juvenile Corrections Facility ("IRJCF") in Massillon.  (*Id.* at 3). There, she worked as an Executive Secretary for approximately four years.  (*Id.*).

In 2009, DYS offered Ames a new assignment as an "Administrative Assistant 2 or Program Administrator 2" in its Central Office in Columbus. (*Id.*). There, Ames worked in this role just over five years. (*Id.*). After receiving positive reviews and salary raises, DYS promoted Ames to Prison Rape Elimination Act Administrator ("PREAA") in 2014. (*Id.*). In May of 2017, Ginine Trim became Ames's supervisor. (*Id.*). Trim is a female who identifies as a member of the Lesbian, Gay, Bisexual, Transgender, Intersex, and Questioning ("LGBTIQ") community. (*Id.*). Trim made Ames aware that she was a member of this community. (*Id.*).

Meanwhile, DYS hired Alexander Stoksavljevic at IRJCF as a social worker. (*Id.*). Stoksavljevic is a male who identifies as a member of the LGBTIQ community and was twenty-five in May of 2017. (*Id.*). In October of the same year, DYS promoted Stoksavljevic to Client Advocate/PREA Compliance Manager ("PCM"). (*Id.* at 4). Notably, because Stoksavljevic was still on probationary status, he was not eligible for this promotion. (*Id.*). To circumvent this obstacle, the Superintendent of IRJCF suggested that Stoksavljevic resign his current position so that he may be hired as a PCM the following day. (*Id.*). According to Plaintiff, this conduct violated the agency's hiring processes. (*Id.*). Stoksavljevic then began pushing for Plaintiff's position. (*Id.*). He told Trim—in front of Plaintiff—that Plaintiff should retire. (*Id.*).

On May 6, 2019, Trim paid Ames a visit at her desk. (*Id.*). After congratulating Ames for 30 years of public service, Trim suggested that Ames retire. (*Id.*). Alternatively, Trim suggested, Ames should return to the Akron facility where she started her career with DYS. (*Id.*). Indeed, Trim encouraged Plaintiff to apply for the now open position Stojsavljevic just left; this would result, however, in a significant pay reduction. (*Id.*). Plaintiff rebuffed both suggestions. (*Id.*).

Four days later, Plaintiff was required to report to Director Ryan Gies's conference room. (*Id.* at 4-5). There, HR Bureau Chief Robin Gee and Assistant Director of DYS Julie Walburn

2

waited for Ames. (*Id.* at 5). Walburn told Ames she was being demoted and transferred and that she needed to sign an agreement reflecting such or risk termination. (*Id.*). In response, Ames fled the room crying. (*Id.*). Gee and Trim followed Ames and renewed Walburn's request. (*Id.*). Plaintiff relented, signed the paper agreeing to a demotion and transfer, and involuntarily vacated the premises. (*Id.*). Shortly thereafter, DYS required Plaintiff to report for her new position at IRJCF. (*Id.*). On May 13, 2019, DYS hired Stoksavljevic as a PREA—the role Plaintiff held immediately prior. (*Id.*). Further, DYS hired Stoksavljevic despite being neither qualified nor having formally applied. (*Id.*). Further, Plaintiff alleges that this was not the only instance of impropriety she faced. (*See id.* at 6).

In April 2019, Ames applied and interviewed for the role of Bureau Chief of the Quality Assurance Department. (*Id.*). Despite being qualified and fulfilling the application requirements, DYS declined to hire Ames, opting instead for Yolanda Frierson. (*Id.*). Frierson, a member of the LGBTIQ community, is under forty years old. (*Id.*). Despite neither applying for the position when it was originally posted nor being qualified, DYS selected Frierson instead of Ames. (*Id.*).

Finally, Plaintiff alleges that DYS behaved improperly in other ways. Unlike when Plaintiff received her 30-year service certificate, Jeffrey Spears—a male who identifies as a member of the LGBTIQ community—was thrown a party replete with cake and published announcements by Trim "and other gay supervisors." (*Id.*). Plaintiff maintains that the all of the above events were motivative by Plaintiff's heterosexual preference, gender and age. (*Id.*).

### B. Procedural

On April 20, 2020 the United States Equal Employment Opportunity Commission ("EEOC") reached a determination of probable cause and issued a 90-day right to sue letter on September 9, 2020. (ECF No. 1-2). On November 18, 2020, Plaintiff filed her initial Complaint

against DYS. (ECF No. 1). Plaintiff alleged eight causes of action under federal and state law arising from her employment with DYS. (*Id.*). Defendant Answered (ECF No. 4), filed its first Motion for Judgment on the Pleadings (ECF No. 11), before Plaintiff ultimately filed her Amended Complaint on May 21, 2021. (ECF No. 28).

In the Amended Complaint, Plaintiff also asserted eight claims. (*Id.*). These causes of action include gender and sexual orientation discrimination under 42 U.S.C. § 2000e, et seq. (Title VII) (Count 1); Hostile work environment based on sexual orientation and age under Title VII (Count 2); Retaliation under Title VII (Count 3); Age discrimination under 29 U.S.C. § 623, et seq. (ADEA) (Count 4); Fourteenth Amendment due process rights under 42 U.S.C. § 1983 (Count 5); Age discrimination under Ohio Rev. Code Chapter 4112 (Count 6); Gender discrimination under Ohio Rev. Code Chapter 4112 (Count 7); and Hostile work environment under Ohio Rev. Code Chapter 4112 (Count 8). Defendant timely filed its Answer. (ECF No. 29).

On June 23, 2021, Defendant filed its Motion for Judgment on the Pleadings. (ECF No. 31). Plaintiff timely filed her Response (ECF No. 36), and Defendant timely filed its Reply (ECF No. 37). This motion is now ripe for review.

## II. STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion"). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotation marks omitted). The Court

must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (internal quotation marks omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. LAW & ANALYSIS

Defendant moves for judgment on the pleadings on two bases: (1) the Court lacks subject-matter jurisdiction as to Counts 4 (ADEA), 6, 7, and 8 (the state law claims); and (2) Plaintiff fails to state a claim with regard to Counts 2 (Federal Hostile Work environment), 3 (Retaliation under Title VII), and 5 (42 U.S.C. § 1983). The Court will address each argument in turn beginning with Defendant's argument against subject-matter jurisdiction.

#### A. Subject-Matter Jurisdiction

##### 1. Count 4: ADEA

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claim brought under the Age Discrimination in Employment Act (ADEA). (ECF No. 31 at 3). Relying on the Supreme Court's decision in *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 92 (2000), Defendants contend that Congress has not validly abrogated state immunity under the ADEA. (*Id.*). Additionally, Defendant, relying on *Cameron v. Ohio*, No. 2:06-CV-871, 2007 U.S. Dist. LEXIS 76774, at *5-6 (S.D. Ohio Oct. 16, 2007), argues that the State of Ohio has not waived its immunity. (*Id.*). Accordingly, argues Defendant, this Court lacks subject matter jurisdiction over this claim. (*Id.*). Plaintiff begrudgingly concedes this argument. (ECF No. 36 at 2). Accordingly, Defendant's Motion on this basis is **GRANTED**.

### 2. *Counts 6, 7, 8: State Law Claims*

Defendant also argues that Counts 6, 7 and 8—all alleged violations of Ohio Revised Code section 4112—cannot be prosecuted in federal court. (ECF No. 31 at 4). Defendant, relying on *Dendinger v. Ohio*, contends that the "Eleventh Amendment deprives federal courts of jurisdiction" regarding actions brought pursuant to Ohio revised code chapter 4112. (*Id.*) (citing 207 F. App'x 521, 529 (6th Cir. 2006)). Moreover, according to Defendant, because the State of Ohio did not consent to being sued in federal court under this state statute, this Court may not adjudicate these claims. (*Id.*). As such, Plaintiff's claims against DYS, a state administrative agency, pursued under Ohio Revised Code section 4112 should be dismissed for lack of subject matter jurisdiction. (*Id.*).

Plaintiff responds that the authority cited by Defendant is persuasive rather than mandatory. (ECF No. 36 at 2). Instead of conceding this claim outright, Plaintiff argues that the Court, if it finds it is without jurisdiction, should transfer these claims "to the Ohio Court of Claims to determine whether immunity applies." (*Id.*). Plaintiff then argues that Ohio Revised Code Sections 4112.02 and 2743.03 do not require that such suits be exclusively brought in the Ohio Court of Claims. (*Id.* at 3). This, Plaintiff says, is true despite her arguing that the state waived its sovereign immunity as to such claims. (*Id.*).

As Plaintiff concedes, case law weighs heavily against her argument. Here, as in *Robertson v. Rosol*, "Plaintiff['s] argument is not well taken." No. 2:06CV1087, 2007 WL 2123764, at *4 (S.D. Ohio July 20, 2007); *Donahoo v. Ohio Dep't of Youth Servs.*, 237 F. Supp. 2d 844, 874 (N.D. Ohio 2002) (District Court finding that it lacked subject matter jurisdiction to hear Ohio state law claims under R.C. 4112). Even assuming, as Plaintiff argues, that the State of Ohio waived its sovereign immunity as to claims under R.C. 4112 et. seq., that does not give this Court subject

matter jurisdiction. Indeed, "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation … [n]or … does it consent … by authorizing suits against it "in any court of competent jurisdiction." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citing *Smith v. Reeves*, 178 U.S. 436, 441–445 (1900) and *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 577–579 (1946)); see also *Donahoo*, 237 F. Supp. 2d at 874 (finding "State of Ohio has waived its immunity from suit and consented to having its liability determined by the state Court of Claims" despite the federal court finding it lacked jurisdiction).

Thus, even if the state courts of Ohio decide such actions do not need to be exclusively adjudicated in its Court of Claims, that decision is neither this Court's concern nor dispositive of the issue of whether this Court has jurisdiction. Instead, it is "the State's Eleventh Amendment immunity that answers this question." *Rosol*, 2007 WL 2123764, at *4 (citing *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984)). Moreover, this rule extends to that state's agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court.") (internal quotations omitted). Absent an ***explicit*** waiver of that immunity—and the Sixth Circuit held in *McCormick v. Miami University*, 693 F.3d 654, 664 (6th Cir. 2012) that Ohio has not invoked that waiver, this Court has no power to hear this claim.

Accordingly, Defendant's Motion for Judgment on the Pleadings as to state law claims 6, 7 and 8 is **GRANTED**.

**B. Failure to State a Claim**

Next, Defendant argues that Plaintiff fails to state a claim upon which relief can be granted with regard to Counts 2, 3, and 5. The Court addresses these arguments beginning with Count 5, continuing with Count 3, and concluding with Count 2.

*1. Count 5: Fourteenth Amendment Due Process Rights Under 42 U.S.C. § 1983*

Defendant argues that Plaintiff's claim under section 1983 fails because DYS is an improper defendant. (ECF No. 31 at 4). Defendant, relying on *Will v. Michigan Dept. of State Police,* contends that a § 1983 claim is properly asserted against a "person" acting under color of state law. (*Id.*) (citing 491 U.S. 58, 71). Because neither the state nor its officials acting in their official capacities are persons under section 1983, Plaintiff's claim against DYS—a state administrative agency—fails as a matter of law. (*Id.*). Plaintiff concedes this issue and requests that she be able to amend her complaint. (ECF No. 36 at 4). Because Plaintiff concedes this issue, the Court will not address whether this claim would fail for another independent reason. (*Id.*).

Accordingly, Defendant's Motion on this basis is **GRANTED**.

*2. Count 3: Retaliation under Title VII*

Next, Defendant contends that Plaintiff fails to allege a necessary element of a Retaliation claim under Title VII. (ECF No. 31 at 5). Specifically, Defendant argues that Plaintiff failed to allege that she was engaging in a protected activity as defined by that statute. (*Id.* at 6). Indeed, according to Defendant, such vague charges of discrimination are routinely rejected. (*Id.* at 7). Additionally, Defendant argues that Plaintiff also fails to demonstrate a causal connection between the alleged protected activity and the alleged adverse employment action. (*Id.* at 8). According to Defendant, by Plaintiff's own words "she only refused to retire or accept a lesser position when it

8

was allegedly presented to her." (*Id.*). Consequently, DYS made the allegedly adverse employment action before she engaged in the protected activity. As such, her claim must fail.

Plaintiff responds that Defendant mischaracterizes the issue. It was Plaintiff's resistance to discriminatory conduct that was protected by Title VII. (ECF No. 36 at 5). As a result of her resistance, DYS demoted her. (*Id.* at 6). In other words, Plaintiff insists there is a distinction between her supervisors demanding she voluntarily retire or take a lesser position and doing so involuntarily. (*Id.*). Further, Plaintiff disputes that her allegations regarding the causal connection between her resistance and her demotion are clear. (*See id.*). Plaintiff reiterates that she was punished by being forced to do something involuntarily that she would not do voluntarily. (*Id.* at 7). For these reasons, she says Defendant's argument must fail.

To assert "a prima facie case of retaliation under Title VII … the plaintiff bears the initial burden of establishing that (1) [s]he ... engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 488–89 (6th Cir. 2020), cert. denied, 141 S. Ct. 1743, 209 L. Ed. 2d 508 (2021) (quoting *Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014)).

A plaintiff may satisfy the pleading requirement for protected activity by "alleging conduct that falls within one of two clauses in the statute, which says it is an:

> unlawful employment practice for an employer to discriminate against any of his employees ... [1] because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

9

*Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 549 (6th Cir. 2020) (quoting 42 U.S.C. § 2000e–3(a)). Accordingly, "[t]he first clause is known as the "opposition clause," and the second as the "participation clause." *Id.* The opposition clause, of the two, is the more expansive route. Specifically, "[t]he Supreme Court has held that the term "oppose" should be interpreted based on its ordinary meaning: "[t]o resist or antagonize ... ; to contend against; to confront; resist; withstand." *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009)). Additionally, "[e]xamples of opposition activity protected under Title VII include complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII." *Id.* (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (internal quotations omitted)).

That said, there are limits to what satisfies the opposition clause. And "[w]hile the plaintiff's allegations of protected activity do not need to be lodged with absolute formality, clarity, or precision, the plaintiff must allege more than a vague charge of discrimination." *Id.* (citing *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015)). Indeed, a Plaintiff must put the defendant "on notice that her complaint concern[ed] statutory rights." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 373 (6th Cir. 2013).

Here, Plaintiff attempts to plead this element by asserting that she resisted her supervisors' insistence that she retire or accept a demotion on several occasions. When a co-worker expressed to Plaintiff's supervisor that he "wanted Plaintiff's job and that Plaintiff should retire," she responded, in her words, by "continu[ing] to resist and indicat[ing[ that she intended to work until she was 65 years of age." On May 6, 2019, Plaintiff said "no" when her supervisor suggested that

10

she should retire or in the alternative, consider seeking a lower-paying position at a different location.

Although Plaintiff asserts that "she advised her supervisors that demanded her to retire, or take a lesser position, because of her gender, age and/or sexual orientation was discriminatory," this allegation only appears in the Complaint as quoted above and not in the factual allegation section.  This is the precise type of "legal conclusion couched as a factual allegation" that this Court "is not bound to accept as true."  *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 794 (6th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although Plaintiff provides no authority for the proposition that either saying "no," she intended to continue working until age 65, or asking why she was being demoted constitutes opposition under Title VII, she urges this Court to accept her view of the law.  Although opposition is the more expansive pathway to satisfy the protected activity requirement, vague resistance, much like vague charges of discrimination, do not satisfy this element.  *See Jackson*, 999 F.3d at 344.

 Taken together, Plaintiff has neither pleaded activity under the participation clause nor the opposition clause.  Because a failure to plead protected activity obviates the need to consider whether Plaintiff adequately pled a causal connection, this Court does not address that argument.  As such, her Retaliation claim under Title VII is **DISMISSED.**

3.  *Count 2: Hostile Work Environment*

Finally, Defendant argues that Plaintiff's claim for a Hostile Work environment under Title VII similarly fails.  (ECF No. 31 at 9).  First, to the extent she attempts to assert a claim based on age, it fails because age is not a protected class under Title VII.[1]  (*Id.* at 8).  Secondly, Defendant

---

[1] This argument is mirrored for the Retaliation Claim under Title VII.  Because age is not a protected class under Title VII, to the extent Plaintiff attempts to assert an age-based claim, this claims fails. *See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1988 ed. and Supp. V) (race, color, sex, national origin, and religion).

11

maintains that Plaintiff failed to allege any discriminatory behavior that constituted harassment. (*Id.* at 9). For example, the absence of a celebration for a workplace milestone is simply not sufficient to support the conclusion that she worked in an abusive environment. (*Id.*). Even if she did feel unwelcome that is not enough to support the inference of severe or pervasive harassment. (*Id.* at 9–10). Furthermore, courts have dismissed such claims when plaintiffs assert only a few instances of harassing or offensive behavior. (*Id.*) (citing *Woodson v. Holiday Inn Express*, No. 18-1468, 2018 WL 5008719, at *2) (6th Cir. Oct. 4, 2018)). Because Plaintiff's complaint fails to reference even one instance of harassing or offensive behavior due to her sex or sexual orientation," this claim must fail. (ECF No. 37 at 5).

Plaintiff responds by noting that denial of a promotion and a demotion is evidence of a hostile work environment. (ECF No. 36 at 7). Moreover, she insists that these actions were motivated by her sexual orientation. (*Id.*). Plaintiff notes that her superiors were "friends and supporters of the LGBTIQ community." (*Id.* at 8). Importantly, according to Plaintiff, people outside of this group were excluded and unwelcome. (*Id.*). Plaintiff urges that this allegation can support her hostile work environment claim. (*Id.*). The Sixth Circuit has "broken this claim into five elements:

> (1) [The plaintiff] belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [sex], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 565 (6th Cir. 2021) (citations omitted). Further, "[s]exual harassment in the workplace constitutes discrimination in violation of these provisions [w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

12

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 564 (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms of employment." *Brown v. Bd. of Educ. of Shelby Cty. Sch.*, 47 F. Supp. 3d 665, 682–83 (W.D. Tenn. 2014)).

The Sixth Circuit has recognized three ways to demonstrate that the harassment complained of was based on sex or sexual orientation: "(1) by showing that the harasser making sexual advances acted out of a sexual desire; (2) by showing that the harasser was motivated by general hostility to the presence of [women] in the workplace; or (3) by offering "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 471 (6th Cir. 2012) (citing *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006) and *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Here, Plaintiff asserts that the constant demands for her to leave the office (by either retiring or taking another position), among other things, are sufficient to allege a claim of hostile work environment. Yet, despite Plaintiff's characterization of the demands for her to leave as being constant, she only asserts two isolated incidents in her Complaint: one on May 6th and another on May 10th. The balance of the "demands" to leave were apparently perpetrated by a co-worker, Mr. Alexander Stojsavljevic. She alleges that Stojsavljevic, in the presence of Plaintiff and her supervisor, made comments that "he wanted Plaintiff's job and that Plaintiff should retire."

Even if the above could ever be sufficient to support a claim of hostile work environment, Plaintiff has not adequately pled that this occurred because she is either a woman or because she is heterosexual. Instead, she makes the bald assertion that "her heterosexual status caused her to

13

be discriminated against by the LGBTIQ community of supervisors and employees." To support her conclusion, Plaintiff further states that "[o]thers outside of Plaintiff's protected groups were either not demoted or did not receive such a significant decrease in their compensation when moved to another position, or demoted due to discipline."

This conclusory allegation does not allow the Court to infer that complained of acts took place because of either her sex or sexual orientation. Even taking all of her factual assertions as true, the fact that some of her colleagues were rude to her (the man claiming that he wanted her job and that she should retire), did not throw her appreciation parties, or pressured her to retire or be transferred is not indicative of *gender-based* or *sexual-orientation based* bias. Moreover, her conclusory claims that these instances were motivated by such bias are without support. Instead, it appears that Plaintiff in presenting a collection of loosely related data points, expects this Court to draw the conclusion she did: that her colleagues singled her out because she was a heterosexual woman. But there is a sizable gap between what she has alleged and a cognizable claim of gender or sexual orientation-based discrimination.

Because she fails to allege an essential element of the hostile work environment cause of action—that the harassment she experienced was based on sex or sexual orientation—her claim necessarily fails and this claim is **DISMISSED**.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment on the Pleadings (ECF No. 31) is **GRANTED**. Count 4 is **DISMISSED WITH PREJUDICE.** Counts 2, 3, and 5 as well as Counts 6, 7, and 8 (the state law claims) are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

DATED: March 29, 2022

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

14