**IN THE UNITED STATES DISTRCT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MARLEAN AMES, | ) | CASE NO. 2:20-cv-05935-ALM-EPD |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE ALGENON L. |
| | ) | MARBLEY |
| v. | ) | |
| | ) | CHIEF MAGISTRATE JUDGE |
| STATE OF OHIO DEPARTMENT OF | ) | ELIZABETH PRESTON DEAVERS |
| YOUTH SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

---

**CORRECTED
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES**

---

Plaintiff Marlean Ames, by and through the undersigned counsel, respectfully submits that she is a prevailing party under §1988 such that the Court should grant her *Motion for Attorney Fees* (Doc. 92, refiled as Doc. 105-1) and award her fees and costs of $466,240.00 against Defendant State of Ohio, Department of Youth Services. (*See* Doc. 92-4, PageID# 2701.)[1] In reply to Defendant's opposition (Doc.108), Plaintiff responds as follows:

**I.      Defendant's Interpretation of "Prevailing Party" Is Too Limited and Is Inconsistent with Governing Precedent. Plaintiff Is a Prevailing Party because She Prevailed on a Significant Issue that Materially Altered the Legal Relationship of the Parties.**

Defendant's core argument - that no fees may be awarded because Plaintiff has not yet obtained final judgment - misstates governing Supreme Court and Sixth Circuit precedent. As previously set forth in *Plaintiff's Opposition to Defendant's Motion to Dismiss or Stay Consideration of Plaintiff's Motion for Fees* (Doc. 98), which Plaintiff fully incorporates herein,

---

[1] Plaintiff generally agrees with the Procedural History concerning her request for attorney fees as set forth by Defendant, Doc. 108, PageID# 2803.

§1988 does not require ultimate success on the merits of all claims. Rather, a plaintiff "prevails" when she succeeds on a significant issue in litigation that achieves some of the benefit sought and materially alters the legal relationship between the parties. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Texas State Teachers Assn v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) (noting "Congress clearly contemplated that interim fee awards would be available where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues").

Sixth Circuit precedent confirms that a party may be deemed prevailing where appellate success materially changes the posture of the case, even absent final judgment. *See Deja Vu of Nashville, Inc. v. Metropolitan Govt. of Nashville*, 421 F.3d 417, 420 (6th Cir. 2005) (prevailing party status turns on whether the relief obtained materially alters the legal relationship); *McQueary v. Conway*, 614 F.3d 591, 597 (6th Cir. 2010) (same); *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001) (recognizing that escaping "dire consequence" due to success before a court demonstrates a "substantial reversal in [the] legal relationship" and supports prevailing party status).

That is precisely what occurred here. Plaintiff prevailed before the United States Supreme Court on a pivotal legal issue that Defendant had successfully invoked to defeat Plaintiff's claims in the lower courts. In a unanimous decision, the United States Supreme Court held that majority-group plaintiffs are not required to meet a heightened evidentiary standard of showing "background circumstances." The "background circumstances" rule "cannot be squared with the text of Title VII or [the Court's] longstanding precedents." *Ames v. Ohio Dept. of Youth Services*, 145 S. Ct. 1540, 1546 (2025). In reaching this decision, the Supreme Court rejected Defendant's legal position, vacated the adverse judgment, and returned the case to this Court for further

proceedings under a corrected legal standard. That relief was not advisory or procedural housekeeping. It was decisive and outcome-determinative of the framework governing Plaintiff's claims going forward. It directly benefited Plaintiff, whose claim was otherwise finally extinguished under an erroneous legal rule.

Defendant's reliance on *Lackey v. Stinnie*, 604 U.S. 192 (2025), is misplaced and ultimately confirms - rather than undermines - Plaintiff's status as a prevailing party. *Lackey* held only that purely interim, non-merits relief that evaporates before final adjudication, such as a preliminary injunction dissolved as moot, does not confer prevailing-party status. *Id.* at 202-03. That is not this case. Plaintiff obtained a merits-based decision from the United States Supreme Court that rejected the legal standard applied by the lower courts, reversed the summary judgment entered against her, and fundamentally altered the legal relationship between the parties by restoring her discrimination claim for adjudication under the correct standard. This judicially sanctioned, merits determination is precisely the type of relief *Lackey* recognizes as sufficient to confer prevailing party status, even absent a final damages judgment, because it conclusively and *enduringly* changed Plaintiff's position in the litigation to her direct benefit.

At bottom, Defendant invites the Court to improperly collapse "prevailing party" into "ultimate winner." The Supreme Court has repeatedly rejected such a rule, and *Lackey* did nothing to resurrect it. Plaintiff's success before the Supreme Court was neither tentative nor transitory: it was a judicially sanctioned, merits-based victory that vacated an adverse judgment, eliminated a dispositive legal barrier to her claims, and restored her case for adjudication under the correct standard. Plaintiff's motion is therefore not "premature," but seeks fees for a discrete and completed phase of litigation in which she unquestionably prevailed. Courts routinely award

interim or issue-specific fees under §1988 where, as here, the plaintiff has achieved meaningful success warranting compensation. *See Webster v. Sowders*, 846 F.2d 1032, 1038 (6th Cir. 1988).

**II.     Plaintiff's Hourly Rate Is Reasonable Given the Extraordinary Nature of the Litigation and the Results Achieved.[2]**

Defendant's attack on Plaintiff's $1,600.00 hourly rate rests on an unduly rigid application of "local market" principles that ignores the nature and scope of the representation at issue. This was not a routine local employment case litigated solely before a state trial court. It was Supreme Court advocacy in a case of national significance. The decision itself fundamentally altered the legal landscape for "reverse discrimination" claims and reshaped how disparate treatment claims are evaluated. Defendant's own opposition underscores the sophistication of the proceedings, highlighting the involvement of amici, law school clinics, and extensive appellate briefing. The relevant market for a substantial portion of Plaintiff's counsel's work is therefore the national market for specialized Supreme Court and high-level appellate advocacy, not the local state area. Fees should be evaluated in light of the market in which the services were rendered and the level of expertise required, particularly where, as here, counsel achieved exceptional, merits-based success on the nation's highest judicial stage. *See Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010).

The reasonableness of Plaintiff's requested rate must also be assessed in light of the economic realities of the representation. *See Hensley*, 461 U.S. at 430, n.3. Plaintiff's counsel

---

[2] To calculate the "reasonable hourly rate," the Court should assess the rate which lawyers of comparable skill and experience can reasonably expect to command. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013). The Court may then adjust the award based on any relevant "Johnson" factors. *See Hensley*, 461 U.S. at 430, n.3, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Those factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

undertook this case on a contingent basis, assuming the substantial risk that years of litigation, including Supreme Court review, could yield no recovery and no fee. Fee-shifting statutes exist to ensure that plaintiffs can secure competent counsel under these circumstances. While contingency alone does not justify a fee enhancement, it is properly considered in determining the market rate necessary to attract qualified counsel willing and able to handle high-stakes, complex civil rights litigation. *See Perdue*, 559 U.S. at 552-54.

The only expert opinion addressing the national market is offered by Mark John Skakun, III, who is admitted to practice before the Supreme Court and has experience as an employment discrimination practitioner. (*See* Doc. 92-2, PageID# 2670–73.) By contrast, Defendant's expert, Craig Woods, confined his analysis to prevailing hourly rates in Ohio and did not assess rates for Supreme Court-level advocacy. (*See* Doc. 108-1, PageID# 2825.) Notably, Mr. Woods charges $550 per hour to provide fee opinions. (Doc. 108-1, PageID# 2830.) This is more than the $450 hourly rate he identifies as reasonable for a Supreme Court practitioner. This comparison underscores the disconnect in Defendant's approach: Defendant places greater weight on an expert opinion about rates than on the actual work of a practitioner who litigated a complex, high-stakes discrimination case on a contingency basis and secured a landmark Supreme Court decision that changed decades of law. Plaintiff respectfully submits that Attorney Gilbert's contributions and results far exceed what any fee expert's opinion alone can capture.

Moreover, the defense expert's opinion is entitled to little weight because it is untethered from the actual nature and demands of this case. Mr. Woods's professional background does not include Supreme Court advocacy or employment discrimination, and his current practice focuses primarily on dispute resolution rather than active trial or appellate litigation. As a result, his analysis is limited to billing norms and litigation practices within Ohio matters, and there is no

5

indication he has the institutional knowledge necessary to evaluate the reasonableness of fees for Supreme Court-level work. By contrast, Plaintiff's expert is engaged in appellate and discrimination practice, has firsthand experience with the skills and expertise required to represent clients before the Supreme Court, and bases his opinion on a more national pool of counsel capable of providing such representation, along with Attorney Gilbert's extensive civil rights background. Defendant's failure to account for these realities renders its expert's opinion methodologically flawed and insufficient to rebut the reasonableness of the $1,600 hourly rate.

### III. Defendant's Objections to Reasonableness Lack Merit, and in Any Event, Go to Weight, Not Entitlement.

Defendant devotes substantial briefing to alleged deficiencies in billing format, including block billing, quarter-hour increments, and travel. None of these criticisms are valid given the circumstances of this case. Even if the Court were to accept some of these criticisms, they do not justify wholesale denial of fees.

#### A. Block billing

Defendant's complaints about block billing are unfounded. The Sixth Circuit has held block billing "can be sufficient" if the description of the work performed is adequate. *Smith v. Serv. Master Corp.*, 592 Fed. Appx. 363, 371 (6th Cir. 2014); *see also Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007) (Moore, J., concurring in part and dissenting in part) ("[Plaintiff] has cited no authority to support its argument that the use of block billing is contrary to the award of a reasonable attorney fee ... and, in fact, our sister circuits have rejected block-billing objections to fee awards in a number of contexts."). That the Ohio Supreme Court may no longer approve block-billed time entries, *see State ex rel. Harris v. Rubino*, 156 Ohio St. 3d 296 (2018), is of no moment; the present dispute is a matter of federal, not state, practice, and research revealed no case from this circuit that adopted

6

*Rubino*'s position on block billing. Further, courts have not treated *Rubino* as an absolute bar to the submission of block billed time. *See, e.g., Christen v. Continental Enterprises, Ltd.*, 2020-Ohio-3665, 154 N.E. 3d 1192, 1203 (Ct. App. 2020).

While Defendant maintains the time entries "lack the specificity necessary for meaningful judicial review," that is not the case. Plaintiff's billing records adequately describe the tasks performed, and block billing does not render the requested fees unreasonable or inappropriate. Defendant's criticisms are largely ticky-tack and formulistic, objecting, for example, that entries for "client communications" do not specify the form or particular necessity of the communication. Yet it is immaterial whether a communication occurred by phone, letter, or in person. What matters is that these entries are far from excessive or routine. Communications with clients are a routine and necessary component of legal representation, and the communications reflected in Plaintiff's billing records were neither excessive nor duplicative. They did not occur on a daily or even semi-daily basis, nor were they conducted with any unusual frequency that would suggest duplicaton or overbilling. Rather, the entries reflect reasonable, case-driven communications undertaken in the ordinary course of representing clients in a complex matter, and they provide no basis for Defendant's suggestion that the time should be discounted.

Similarly, Defendant's criticisms suggesting that spending 40 hours on Supreme Court briefing or 25 hours reviewing amicus briefs is excessive are unconvincing. Preparing and reviewing materials for the Supreme Court is inherently complex and time-consuming, and the hours claimed are entirely appropriate given the stakes and difficulty of the work. Far from being excessive, these entries reflect the careful, methodical effort required to litigate at the highest level, and the Court can have full confidence in the sufficiency and appropriateness of the billing records.

## B.      Quarter hour billing

Courts have consistently held that billing in quarter-hour increments is not per se unreasonable. *See King v. Whitmer*, No. CV 20-13134, 2021 WL 5711102, *8 (E.D. Mich. Dec. 2, 2021), *aff'd in part, rev'd in part*, 71 F.4th 511 (6th Cir. 2023) (other citations omitted). Courts uphold quarter-hour billing where, as here, the entries reflect substantive work or are consistent with the firm's standard billing practices. *Id*. Reductions are only warranted where entries appear "suspect" or "fee enhancing," such as when quarter or half-hour charges are applied to tasks that clearly required only a fraction of that time. *Id*.   This is not a case where counsel routinely billed a quarter hour for simple emails, brief phone calls, or other minor tasks. Rather, Plaintiff's time entries reflect substantive legal work. As Plaintiff's time records provide sufficient detail for the Court to assess the work performed, there is no basis to treat quarter-hour billing as improper.

## C.      Travel and administrative tasks

Defendant's contention that travel time should not be compensated is inconsistent with Sixth Circuit precedent and the facts of this case. The Sixth Circuit has often found travel time compensable where, as here, compensation for such time is consistent with local practice. *Smith v. Serv. Master Corp.*, 592 F. Appx. 363, 372 (6th Cir. 2014). The travel at issue was not optional or tangential or even local; it was associated with travel to Washington, D.C. to meet with co-counsel and to participate in proceedings before the United States Supreme Court. Plaintiff's time entries provide specific detail regarding the destination and purpose of the travel, allowing the Court to meaningfully assess its reasonableness. Under these circumstances, Defendant's blanket objection to compensating travel time lacks merit, and the Court may properly award fees for this time as part of a reasonable attorney fee award.

8

Additionally, while Plaintiff agrees that purely administrative or clerical tasks are not compensable, Defendant's effort to recast substantive legal work as "administrative" is overstated. Defendant seeks to reduce the fee request by approximately 14 hours for tasks such as preparing and filing motions, communicating with the Supreme Court on procedural matters, and reviewing Supreme Court orders, including petitions for extensions of time. These activities are integral to the practice of law and require attorney judgment and oversight, particularly in a matter before the United States Supreme Court. No reasonable attorney would wholesale delegate the handling of filings, court communications, or review of orders in a Supreme Court case to non-lawyer staff. Counsel's involvement in these tasks was entirely reasonable and necessary, and the time spent on them is properly compensable as part of a reasonable fee award.

### D.    Media related activities

Defendant also objected to time spent on media and public relations efforts, but that objection ignores the Court's broad discretion to award fees for work that is reasonable and necessary to the litigation. Media and public relations efforts may be compensable where they are tied to the objectives of the lawsuit and serve a legitimate litigation purpose. That is the case here. This litigation culminated in review by the Supreme Court and addressed issues with far-reaching implications for the scope and application of discrimination law. Ensuring that the public - and affected persons - understood the nature of the case, the questions before the Supreme Court, and the resulting change in the legal landscape was not ancillary to the litigation, but a natural and reasonable component of it. The limited time devoted to such efforts was directly related to the case and falls well within the Court's discretion to award as part of a reasonable fee.

9

**E.** **Any credited objections warrant, at most, modest reductions, not denial of fees.**

The time records reflect sustained appellate advocacy in a complex, high-stakes case. Review of amicus briefs, coordination with co-counsel, and preparation for Supreme Court proceedings are not extraneous; they are inherent to effective advocacy at that level. The suggestion that such efforts were unnecessary is belied by the result achieved.

Regardless, any billing imperfections warrant reasonable reductions, not outright rejection of a fee request. *See Hensley*, 461 U.S. at 434; *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848-49 (6th Cir. 2013). Courts retain discretion to apply targeted or percentage reductions to account for any perceived excess, rather than denying compensation for successful civil rights advocacy altogether.

## IV. Conclusion

Section 1988 exists to ensure that civil rights plaintiffs can secure skilled counsel capable of litigating and prevailing on important legal issues against governmental defendants. Plaintiff did exactly that here. She prevailed before the United States Supreme Court, altered the governing law of her case, and returned to this Court with her claims restored under a corrected legal standard. Denying fees under these circumstances would undermine the purpose of §1988 and discourage counsel from undertaking precisely the kind of difficult, high-impact appellate advocacy Congress sought to promote.

For these reasons, Plaintiff respectfully requests that the Court reject Defendant's arguments and award the attorney's fees requested. Should the Court determine that additional factual development is necessary to evaluate the reasonableness of Plaintiff's requested fees, Plaintiff respectfully requests an evidentiary hearing. Such hearing would allow the Court to

consider live testimony regarding prevailing national rates for appellate advocacy as well as any other evidence the Court deems relevant.

Respectfully submitted,

/s/

EDWARD L. GILBERT (0014544)
EDWARD L. GILBERT CO., L.P.A.
3070 W Market Street, Suite 100
Akron, Ohio 44333
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com

*Counsel for Plaintiff Marlean Ames*

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Plaintiff's Reply in Support of Motion for Attorney Fees* has been electronically filed with the Court this *10* day of *Feb.* 2026. Parties may access this filing through the Court's filing system.

/s/
EDWARD L. GILBERT (0014544)
EDWARD L. GILBERT CO., L.P.A.

*Counsel for Plaintiff Marlean Ames*

12