IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARLEAN A. AMES, | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:20-cv-05935** |
| | : | |
| v. | : | **Judge Algenon L. Marbley** |
| | : | |
| STATE OF OHIO DEPARTMENT OF | : | **Magistrate Judge Kimberly A. Jolson** |
| YOUTH SERVICES, | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

### I.    INTRODUCTION

This matter is before the Court on Plaintiff Marlean Ames' Motion for Fees (ECF No. 92; *see* ECF No. 105) and Defendant State of Ohio Department of Youth Services' Motion to Dismiss or Stay Consideration of the Motion for Fees (ECF No. 94).  For the reasons set forth below, the Court **DENIES without prejudice** Plaintiff's Motion and **GRANTS in part** Defendant's Motion.

### II.    BACKGROUND

Marlean Ames filed this lawsuit against Ohio's Department of Youth Services (the "Department") under Title VII, alleging in part that she was denied a promotion and demoted because of her sexual orientation.  (Am. Compl. ¶ 62).[1]  The Department oversees and develops programming for the juvenile corrections system in the state of Ohio.  *See* Ohio Rev. Code § 5139.04(B).  Ames has worked for the Department since 2004, initially serving as executive secretary before receiving several promotions, first to program administrator in 2009, and then to Prison Rape Elimination Act Administrator in 2014.  (¶¶ 17, 20, 22).

---

[1] "Am. Compl." and parenthetical citations to paragraphs "(¶¶ _)" refer to Ames' operative Amended Complaint (ECF No. 18).

1

In May 2019, Ames was demoted and transferred.  She alleges that this occurred after she refused her superiors' pressure to resign, claiming that her superiors wanted to replace her with a younger, unqualified man who "was a member of the LGBTIQ [lesbian, gay, bisexual, transgender, intersex, or questioning] community."  (¶¶ 29, 31, 33–49; *see* ¶ 24).  A month earlier, in April 2019, Ames had also interviewed for a different management position.  She alleges that she was rejected from this role in December 2019, and that the position was filled by a younger, unqualified woman who was "a member of the LGBTIQ community."  (¶¶ 50, 52–53).  Ames is heterosexual, and alleges that "her heterosexual status caused her to be discriminated against by the LGBTIQ community of supervisors and employees."  (¶¶ 57–58).

Ames filed discrimination charges against the Department with the Ohio Civil Rights Commission and the U.S. Equal Employment Opportunity Commission in August 2019.  A year later, the Equal Employment Opportunity Commission found reasonable cause to believe that Ames had been discriminated against based on her sex (in violation of Title VII of the Civil Rights Act of 1964) and her age (in violation of the Age Discrimination in Employment Act of 1967) and issued a right to sue letter.  (ECF No. 1-3 at 2).  Ames brought suit in November 2020 under both state and federal law, alleging the Department discriminated against her based on her age, gender, and sexual orientation, created a hostile work environment, retaliated against her, and denied her due process rights.  (ECF No. 1 at ¶¶ 61–90).  She filed her operative Amended Complaint in May 2021, the Department moved for judgment on the pleadings in June 2021, and this Court dismissed Ames' counts for gender-based discrimination, retaliation, age discrimination, due process violations, and for a hostile work environment, leaving only one count for sex-based discrimination. *Ames v. Dep't of Youth Servs.*, 2022 WL 912256, at *2, *7 (S.D. Ohio Mar. 29, 2022) (Marbley, J.).

2

In June 2022, the Department moved for summary judgment on Ames' remaining claim for Title VII sex-based discrimination. This Court granted the Department's Motion for Summary Judgment, and dismissed Ames' Title VII sex-based discrimination claims. *Ames v. Dep't of Youth Servs.*, 2023 WL 2539214, at *6, *12 (S.D. Ohio Mar. 16, 2023) (Marbley, J.). It reviewed Ames' claims under the *McDonnell Douglas* burden-shifting framework, which required that Ames first establish a *prima facie* case of retaliation. *Id.* at *7 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). Under Sixth Circuit precedent at the time, members of majority groups had to demonstrate that they were "intentionally discriminated against" despite their majority-group status as a part of making their *prima facie* case. *Id.* (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)). Thus, Ames needed to show "background circumstances" supporting the suspicion that the Department was the "unusual employer" discriminating against the majority. *Id.* This Court determined that she failed to do so and granted the Department's motion for summary judgment. *Id.* at *9, *12.

Ames appealed, and a panel of the Sixth Circuit affirmed, concluding that Ames did not show "background circumstances" sufficient to establish a *prima facie* case and accordingly holding that the Department was entitled to summary judgment. *Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822, 825 (6th Cir. 2023) (per curiam). In a concurrence, Judge Kethledge noted that he joined the decision in full, but disagreed with the rule, suggesting that the Supreme Court might soon address it. *Id.* at 827–28 (Kethledge, J., concurring).

That concurrence was prescient. The Supreme Court granted certiorari to resolve a split between the circuits as to whether majority-group plaintiffs have a different evidentiary burden at the first step of the *McDonnell Douglas* inquiry. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 307–08 (2025). In June 2025, a unanimous Supreme Court rejected the Sixth Circuit's

"background circumstances" rule and held that Title VII did not impose any heightened evidentiary standard on majority-group plaintiffs for them to carry their burden at the first step of *McDonnell Douglas*. *Id.* at 313.  The Court vacated and remanded the case for application of the proper *prima facie* standard.

Immediately following the Supreme Court's decision, Ames moved for "reasonable fees" for her trial counsel, requesting a total of $466,240.00 in fees and $814.03 in costs "for appellate work performed in the United States Sixth Circuit Court of Appeals and the United States Supreme Court."  (ECF Nos. 92 at 1; 92-4; 92-5).[2]  As a basis for this request, Ames argues that she is a "prevailing party on appeal" and thus entitled to attorney's fees and costs under 42 U.S.C. § 1988. (ECF No. 92 at 2).

The Department promptly moved to dismiss or stay consideration of the Motion for Fees, arguing that Ames is not a prevailing party.  (ECF No. 94 at 1).  Ames opposed, claiming that plaintiff was a prevailing party because they prevailed on appeal of a "pivotal issue."  (ECF No. 98 at 3).  The Department replied, and also sought and obtained additional time to address the reasonableness of Ames' counsel's requested fees and costs.  (ECF Nos. 99; 101 at 1–2; 103 at 1). In its brief challenging the merits of the requested fees and costs, the Department argued that Ames' counsel's claimed hourly rate far exceeded market rates, that his time entries were too vague and error-ridden, that the fees and costs improperly included administrative tasks and media-related activities, and that the billing increments used were non-standard quarter-hour increments.  (ECF No. 108 at 2, 4–16).  Ames replied, arguing that the hourly rate was reasonable given the extraordinary nature of the litigation and the results achieved, and that any deficiencies in billing

---

[2] At that time, the mandate had not been issued to this Court.  (*See* ECF Nos. 100, 104).  Recognizing this, Ames refiled this Motion for Fees in September 2025, after the mandate was issued to this Court by the Court of Appeals. (ECF No. 105 at 1).

4

warrant only reductions, not denial of the requested fees.  (ECF No. 113 at 4–10). These motions are now ripe for review.

### III.    STANDARD OF REVIEW

The Civil Rights Attorney's Fees Awards Act of 1976 permits a court to award to the "prevailing party," in the court's discretion, reasonable attorney's fees in certain civil rights actions. 42 U.S.C. § 1988(b).   This statute has been understood in a "purpose-driven manner as "presumptively requiring district courts to grant fees to prevailing plaintiffs," *Gun Owners of Am., Inc. v. Bondi*, _ F.4th __, 2026 WL 576048, at *3 (6th Cir. Mar. 2, 2026), unless "special circumstances" would render the award unjust.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *accord Deja Vu v. Met. Gov't of Nashville & Davidson Cty.*, 421 F.3d 417, 420 (6th Cir. 2005).

A plaintiff is not entitled to any attorney's fees unless it is a "prevailing party." *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989); *see also Lackey v. Stinnie*, 604 U.S. 192, 202 (2025).  Once it has established prevailing party status, the "degree of the plaintiff's overall success goes to the reasonableness of the award," not its availability. *Texas State Tchrs. Ass'n*, 489 U.S. at 793.

### IV.    LAW AND ANALYSIS

There is no question that Ames *can* obtain reasonable attorney's fees and costs under 42 U.S.C. § 1988 for her cause of action under Title VII of the Civil Rights Act of 1964 if she is the prevailing party.  *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 812, 821–27 (6th Cir. 2013) (affirming district court award of attorney's fees and costs under section 1988 for a Title VII action). But the parties dispute whether Ames is a "prevailing party" within the meaning of the statute.

Ames' counsel argues that Ames "is the prevailing party on appeal," and thus fees and costs are appropriate under the statute.  (ECF No. 92 at 2).  Under this argument, prevailing within the

5

meaning of section 1988 does not require that Ames secure a judgment or win on every issue—just that Ames "'prevail[] on an important matter in the course of litigation'" and "achieve[] some of the benefit the parties sought in bringing suit.'" (ECF No. 98 at 2 (quoting S. Rep. No. 94–1011, 1976 WL 14051, at *5 (1976); *Hensley*, 461 U.S. at 433)).

The Department counters that the application of Ames' counsel for fees and costs is premature at this time, because Ames has not prevailed within the meaning of the statute. Indeed, the Supreme Court remanded for reconsideration of the first step of the *McDonnell Douglas* burden-shifting framework, and thus Ames has not prevailed because she has not obtained a judicially-sanctioned change in the relationship between the parties. (ECF Nos. 94 at 3–5; 99 at 3–4). And the Sixth Circuit has stated that when the Supreme Court vacates and remands, there is no "final determination on the merits." *In re Payne*, 722 F. App'x 534, 539 (6th Cir. 2018); (ECF No. 94-1).

The Department is correct. Ames is not a "prevailing party" within the meaning of 42 U.S.C. § 1988(b) at this stage of the litigation, and therefore her counsel's application for attorney's fees and costs is premature. It is well-established that a "prevailing party" is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Prevailing Party*, Black's Law Dictionary 1351 (11th ed. 2019). The term is "a legal term of art." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001) (citing *Prevailing Party*, Black's Law Dictionary 1145 (7th ed. 1999)). Undoubtedly, Ames' victory before the Supreme Court was significant. She "prevailed" with respect to her appeal and in a colloquial sense of the word. But she is not a prevailing party within the meaning of the *legal* term as it is understood with respect to section 1988(b) and the case *sub judice*, because she has not yet achieved any of the benefit she sought in bringing suit against the Department. *Texas State Tchrs.*

*Ass'n*, 489 U.S. at 791–92; *Deja Vu*, 421 F.3d at 420 ("To be a 'prevailing party,' a party must 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'") (quoting *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999)).  Indeed, Ames' victory has ensured that her case against the Department survives—but she has not been vindicated on the merits of her Title VII case against the Department.

The Sixth Circuit has explicitly rejected the argument that obtaining a reversal of an adverse summary judgment  decision is "prevailing" for the purposes of awarding attorney's fees under section 1988.  *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 619–20 (6th Cir. 2007); *see also In re Payne*, 722 F. App'x at 539.  And the Supreme Court's recent decision in *Lackey v. Stinnie* only serves to confirm this principle.

In *Lackey*, the Supreme Court considered when a party is a "prevailing party" qualified for the award of attorney's fees under 42 U.S.C. § 1988(b).  Virginia motorists with suspended licenses sued the commissioner of the Virginia Department of Motor Vehicles, arguing that the Virginia statute requiring their license suspension was unconstitutional.  The district court preliminarily enjoined the commissioner from enforcing the statute, but before a final judgment, Virginia's legislature repealed the challenged law, rending the case moot.  The district court declined to award attorney's fees, determining that the motorists were not prevailing parties under section 1988(b) despite winning a preliminary injunction.  Sitting en banc, the Fourth Circuit vacated and remanded for determination of a reasonable fee.  The Supreme Court granted certiorari to determine whether a "prevailing party" could include a party awarded a preliminary injunction if the case became moot prior to final judgment.  *Lackey v. Stinnie*, 604 U.S. 192, 195–96, 198–99 (2025).

The Supreme Court held that a party awarded a preliminary injunction was not a prevailing party that could obtain a fee award, because preliminary injunctions "do not conclusively resolve legal disputes." *Id.* at 200.  Cautioning against equating likelihood of success on the merits with success, the Court determined that "[b]ecause preliminary injunctions do not conclusively resolve the rights of parties on the merits, they do not confer prevailing party status." *Id.* at 201.  In doing so, it elaborated on its prior decision in *Buckhannon* and held that "a plaintiff 'prevails' under the statute when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties." *Id.* at 203–04 (citing *Buckhannon*, 532 U.S. at 605).

*Lackey* is instructive.  Similar to the preliminary injunction victory in that case, here Ames' victory on appeal has not conclusively resolved the rights of the parties on the merits.  Thus, Ames is not a prevailing party—at least, not yet.  To prevail, she must succeed on the merits, which means achieving:  (1) a material change in her legal relationship with the Department of Youth Services; that is (2) "judicially sanctioned." *Id.* at 201–04.  Both of these requirements are prerequisites, and neither requirement is satisfied in this case.  Here, Ames has achieved an interim victory, but not relief.  She has not conclusively resolved a claim against the Department, nor has she obtained "the necessary judicial *imprimatur*" on any requested relief. *Id.* at 203 (emphasis in original).

"Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of [her] claim before [she] can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987).  Because no court has "conclusively resolve[d] a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties," *Lackey*, 604 U.S. at 203–04, Ames cannot be the prevailing party, and her counsel is thus not yet eligible for any award

8

of fees pursuant to 42 U.S.C. § 1988.  *See Maryville Baptist Church v. Beshear*, 132 F.4th 453, 455–56 (6th Cir. 2025) (a victory in obtaining a preliminary injunction is "not enduring relief based on a conclusive determination that the plaintiff won, and not relief that changes the relationship between the parties"); *see also, e.g.*, *Hanrahan v. Hampton*, 446 U.S. 754, 757–59 (1980); *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).

## V.    CONCLUSION

This Court closed the sole remaining avenue for Ames' sought relief when it granted summary judgment to the Department on the basis that Ames had failed to make the required *prima facie* case under *McDonnell Douglas* with the Sixth Circuit's old additional requirement for majority-group plaintiffs.  Ames secured a Supreme Court victory that may lead to her ultimate relief on the merits, but she has not finished her journey yet.

The Department's Motion to Dismiss Ames' Motion for Fees (ECF No. 94) is **GRANTED** insofar as it requests denial of Ames' Motion; Ames' Motion for Fees (ECF No. 92; *see* ECF No. 105) is **DENIED** as premature, but without prejudice to its renewal at a later date should Ames prevail.  The parties are **ORDERED** to file post-remand position statements, not more than ten pages in length, within thirty days of the date of this Opinion.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 25, 2026**

9